*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BOWDEN-BEY/WALKER, Minors.

UNPUBLISHED
April 13, 2023

No. 361895
Wayne Circuit Court
Family Division
LC No. 2016-523941-NA

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to the minor children KMB, KSB, and PFB,[1] under MCL 712A.19b(3)(i) (parental rights to a sibling terminated because of sexual abuse; failure to rectify) and (j) reasonable likelihood of harm if returned to parent). The trial court further found, pursuant to MCL 712A.19b(5), that termination of respondent's parental rights was in the best interests of the children.[2] On appeal, respondent contends that the trial court erred by finding clear and convincing evidence to support the statutory grounds for termination because there was insufficient evidence to terminate his parental rights without offering him a treatment plan, and further erred by finding by a preponderance of the evidence that termination of his parental rights was in the best interests of the children. We affirm.

## I. FACTS AND PROCEEDINGS

This case was brought to the attention of the Department of Health and Human Services (DHHS) following a domestic violence incident between respondent and the mother of the children that occurred in front of their home on June 11, 2021. The Detroit Police took a report from the mother. The mother told the police officer that respondent went through her phone and found that she had been texting another male. Respondent became upset and took some of the mother's

---

[1] Respondent was not the biological father of the fourth child named in the petition, TLW. Regarding TLW, the trial court found that her father was unknown and unidentifiable. The trial court terminated the parental rights of the unknown and unidentifiable father of TLW pursuant to MCL 712A.19b(3)(a)(*i*) and (*ii*) (desertion).

[2] The parental rights of the mother were not terminated, and she is not a party to this appeal.

-1-

clothes outside of the home and attempted to burn them. The mother went outside carrying six-month-old PFB, and respondent "struck her in the mouth/lip with a closed fist, knocking her down with the baby in her arms." Respondent then left the area on foot. The police officer who came to the scene observed the mother with a "cut/gash on her lip." The mother received medical treatment at Sinai Grace Hospital for a lip laceration. The police report further stated that there was a witness who reported that he saw the entire incident and attempted to help pick up the mother and PFB, but respondent "pointed 2 guns at him." The witness then saw respondent leave in a black truck.

Upon investigation, a Children's Protective Services (CPS) specialist spoke with the mother, who confirmed the domestic violence, and interviewed respondent, who admitted that he hit the mother, but contended that she was not holding PFB when he hit her. Respondent claimed that the mother put PFB down on the porch before he hit her. Respondent stated that the hitting was an accident. Upon further CPS investigation, it was discovered that respondent had an extensive criminal history, which included 21 convictions for crimes, including two armed robberies and six larcenies in a building, going back to 1986 and continuing through 2018, and a CPS history which included a January 17, 2014 termination of his parental rights to his child, VB, by another mother, based on the sexual abuse of VB's seven-year-old half-sister. The victim testified at the prior termination hearing regarding sexual abuse that included penetration, oral sex, attempted anal penetration, the viewing of pornography videos and pictures, and threats of injuries if she told her mother. Respondent never acknowledged or accepted responsibility for the sexual abuse. He continued to deny any sexual abuse and contended that the victim's mother and the victim lied. Another prior investigation, which commenced on November 14, 2016, involved the fact that KSB was born testing positive for drugs. The children were removed from respondent and the mother and they were offered services. However, respondent was incarcerated during that time and did not participate in services. The mother completed services and the children were returned to her care on December 19, 2018. When respondent was released from prison, he moved back into the home with the mother and children.

A petition to remove respondent from the home and terminate his parental rights to the three minor children was filed on August 17, 2021, on the basis of the prior termination for sexual abuse, the recent domestic violence, and respondent's extensive criminal history. The petition sought jurisdiction under MCL 712A.2(b)(1) (neglect; risk of harm) and (2) (unfit home), and termination of parental rights under MCL 712A.19b(3)(g) (failure to provide proper care and custody), (i) (prior termination), and (j) (reasonable likelihood of harm). A bifurcated trial and hearing was held over several days. Testimony was taken from DHHS workers, the mother, and respondent, and the trial court took judicial notice of the entire record.

Regarding the domestic violence, the mother testified that the incident in June 2021 was an isolated incident. She testified that respondent had never been physically assaultive with her, or with any other woman. It was an accident. She now claimed that she was walking to their car to put PFB in the infant seat, and respondent was following close behind her. After she put PFB in the infant seat, she turned around and they collided and respondent accidentally hit her mouth with his elbow. She testified that she did not have PFB in her arms when she was hit. Regarding the prior termination, the mother stated that she believed that the victim and the victim's mother lied. Respondent had never been criminally charged. The mother had been with respondent for

more than seven years, and she knew he did not sexually abuse that child. Her children were safe with respondent and he was a great father.

Respondent testified that he had moved out of the house and moved to Florida. He gave the mother his monthly Supplemental Security Income and food stamps for her and the children. He loved the children and had always been involved in their care and he did many activities with them. While in Florida, he contacted the children at least twice a day by video and spoke with them. He wanted to be given a treatment plan and he would move back to Detroit.

The trial court found sufficient evidence to support jurisdiction, clear and convincing evidence to support termination under MCL712A.19b(3)(i) and (j), and, following a best-interest hearing, the trial court stated that, on the basis of the prior sexual abuse of a minor, the long history of criminal convictions, and the physical assault on the mother, it was in the best interests of the children to terminate respondent's parental rights.

## II. DISCUSSION

On appeal, respondent first argues that the evidence was insufficient to support termination of his parental rights because he was willing to work on a treatment plan but was never given the chance to rectify the conditions that led to the prior termination of his parental rights. He further argues that he had been a good father, he stayed in daily contact with his children, the workers had found his parenting appropriate, and the children were bonded to him. He had a legal source of income and was voluntarily supporting the family. He had told the trial court that he did not sexually assault the victim; rather, the victim had lied about the sexual abuse, which was why the police never pressed charges. We conclude that clear and convincing evidence supported the termination of respondent's parental rights under MCL712A.19b(3)(i) and (j).

First, to the extent that respondent is claiming that he was entitled to reasonable efforts for reunification, i.e., a treatment plan, we reject such claim. MCL 712A.19a(2) requires that reasonable efforts be made to reunify the child and family except under certain delineated circumstances, including when the "parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c). In this case, the trial court found that respondent had his parental rights to another child, VB, involuntarily terminated and the conditions that led to that termination had not been rectified. Respondent does not challenge that factual finding or demonstrate that the decision was erroneous. Respondent never acknowledged or accepted responsibility for the sexual abuse that ultimately led to the termination of his parental rights with regard to VB, and there is no evidence that he sought mental health or other treatment in that regard. Therefore, respondent was not entitled to reunification efforts before his parental rights were terminated in this matter.

Next, we turn to the statutory grounds for termination. The trial court found clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(i) and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

-3-

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A trial court's findings of fact are reviewed for clear error. "A finding of fact is 'clearly erroneous' if although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To terminate parental rights, the DHHS must establish by clear and convincing evidence the existence of at least one statutory ground for termination found in MCL 712A.19b(3). *Id.*; see also MCR 3.977(K). "When applying the clear-error standard in parental termination cases, 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C). When at least one ground for termination exists, this Court need not consider the additional grounds on which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

There was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(i). Respondent's entire record was reviewed by the trial court. The certified termination records, dated January 17, 2014, were a part of the record, and provided clear and convincing evidence of respondent's prior termination for sexual abuse. The facts showed that respondent's parental rights had been terminated to his child from another mother because he had sexually abused a half-sibling of that child. The seven-year-old victim had testified that respondent "made her suck his penis, view pornographic photos, view pornographic videos, and tried to stick his penis in her anus." She further testified that respondent threatened to hit her if she told her mother. This is clear and convincing evidence to support the first part of MCL 712A.19b(3)(i). Respondent argues that the trial court should have found that he did not sexually abuse the victim because both he and the mother testified that the mother of the victim had lied about the sexual abuse, he continued to deny any sexual abuse, and he was not criminally charged. There is no merit to this argument. There could be many reasons, other than lack of guilt, why respondent was not criminally charged. For one, perhaps the parents and the prosecutor did not want to put the young victim through a second trial on the criminal charges after she had testified at the termination hearing. In addition, both respondent and the mother gave so many conflicting stories about the domestic violence situation, it is very likely the trial court found their testimony not to be credible. See *In re Miller*, 433 Mich at 337; *In re Mota*, 334 Mich App at 320.

Further, regarding the second part of MCL 712A.19b(3)(i), failure to rectify, the trial court found that, because respondent had denied both the sexual abuse and the need for therapy, the conditions that led to the termination still existed and had not been rectified. The trial court did not clearly err. Respondent's failure to accept responsibility, his continual denial that the sexual abuse ever occurred, and his claim that the mother of the victim had lied, gave the trial court clear and convincing evidence to conclude that respondent had failed to rectify the conditions that led to the prior termination. Accordingly, the trial court did not clearly err by finding clear and

convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(i). This Court is not left with a definite and firm conviction that a mistake has been made. See *In re Mason*, 486 Mich at 152.

Although it is not necessary to address another statutory ground for termination, *In re HRC*, 286 Mich App at 461, we also conclude that there was clear and convincing evidence to support termination under MCL 712A.19b(3)(j). Respondent had a significant record of criminal convictions. He had a prior incarceration. He had a prior termination for the sexual abuse of a seven-year-old female victim. The matter that brought this case into court was a domestic violence situation in which respondent struck the mother in face with his fist so hard that she required hospital attendance for a lip laceration, and this occurred while she was holding their youngest child. The mother initially told the police that respondent's fist knocked "her down with the baby in her arms." Respondent told the trial court that he and the mother did not have a fight, he never punched her in the face; it was an accident. The fact that both respondent and the mother later testified regarding several different versions of this domestic violence occurrence gave the trial court sufficient evidence of their lack of credibility and, therefore, to believe the allegations in the petition. Those allegations included a witness who came forward and described the entire event, including that he saw "the mother fall to the ground with the baby in her arms," and that when he attempted to help the mother up off the ground, respondent pointed two guns at him. This Court has held that how a parent treats one child is probative of how that parent may treat other children. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). The facts of the prior termination, respondent's extensive criminal history, and the more recent domestic violence, was clear and convincing evidence that there was a reasonable likelihood, based on respondent's conduct and capacity, that there was a risk that the children would be harmed if returned to respondent's home. Therefore, the trial court did not clearly err by finding clear and convincing evidence to support termination under MCL 712A.19b(3)(i) and (j).

Next, respondent argues that termination was clearly not in the best interests of the children. We disagree.

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the children's best interests before it can order termination of parental rights. MCL 712A.19b(5). This court reviews for clear error a trial court's decision regarding the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A trial court's finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App at 459. An appellate court must accord deference to the "trial court's special opportunity to judge the credibility of the witnesses." *Id*. Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 88-90; 836 NW2d 182 (2013).

The trial court did not clearly err in finding by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of the children. Regarding best interests, the trial court made the following finding in its order terminating respondent's parental rights:

> Based on [respondent]'s prior sex abuse of a minor and physical assault of the children's mother it is in the best interest to terminate his parental rights. His

parental rights to each of the children should be terminated based on clear and convincing evidence.

Once the petitioner presents clear and convincing evidence that at least one ground for termination was established, "the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). As this Court stated in *In re Moss*, 301 Mich App at 88-90:

> [O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they can be terminated. Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has.

Respondent presents several arguments to support his claim that the trial court clearly erred by finding that termination of his parental rights was in the best interests of the children. Respondent first contends that the trial court did not consider the best interests of each child individually. While this Court held in the case of *In re Olive/Metts*, 297 Mich App at 42, that the best interests of each child individually must be considered by the trial court, we clarified in the case of *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014), that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." In other words, there is no need to make redundant factual findings concerning each child's best interests. *Id*. at 716. Here, there were not any significant differences between respondent's three children that would require the court to determine the best interests of the children individually. All three children resided in the same household with the mother. The record does not reveal any significant difference between the children, such as special physical or mental needs. Respondent does not support this argument with any factor or evidence that displays a significant difference in one or more of the children that would require an individual determination. Under *In re White*, 303 Mich App at 716, the trial court need only determine the best interests of each child individually when the best interests of the children "*significantly* differ." Therefore, the trial court did not err.

Next, respondent argues that his parental rights should not have been terminated because the children were placed with the mother, who should have been considered a "relative," which weighs against termination. See *In re Olive/Metts*, 297 Mich App at 43. However, this argument has been considered and rejected by this Court. Specifically, in *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016), this Court noted that the biological mother is not considered a "relative" under Michigan statutory law. That is, MCL 712A.13a(1)(j) states, in relevant part:

> "Relative" means an individual who is a least 18 years of age and is either of the following:
>
> (*i*) Related to the child within the fifth degree by blood, marriage, or adoption, including the spouse of an individual related to the child within the fifth degree, even after the marriage has ended by death or divorce, the parent who shares custody of a half-sibling, and the parent of a man whom the court has found

probable cause to believe is the putative father if there is no man with legally established rights to the child.

Therefore, the trial court was not required to consider "relative placement" because the children were placed with the mother.

Next, respondent argues that, instead of terminating his parental rights, the trial court should have given him the "opportunity to plan, for the benefit of his children, for reunification." Respondent contends that "no one ever provided him with the chance to rectify the conditions that led to the prior termination his parental rights." This argument is without merit. The trial court found that the "conditions that led to that termination still exist and have not been rectified. [Respondent] has denied the sex abuse and need for therapy." The trial court further found that respondent had "failed to rectify the conditions that led to the prior termination of his parental rights." When the mother testified, she stated that respondent's parental rights to VB were terminated "[b]ecause his baby mom lied and said that he sexually abused her daughter and that was a total lie." Clearly, the mother was repeating what respondent had told her. The record revealed that the victim had testified regarding all the explicit details. Further, respondent continued to lie about the facts concerning the domestic violence incident to the point where he was claiming it was accidental. Respondent's actions clearly demonstrated to the trial court that he had failed to rectify the conditions that led to the termination, and it was highly unlikely that he would rectify the conditions that led to the prior termination and the domestic violence within a reasonable time.

Finally, respondent argues that many of the factors that the trial court is instructed to consider weighed in his favor; therefore, it was not in the best interests of the children to terminate his parental rights. We disagree.

The court "may consider evidence introduced by any party" and "from the evidence on the whole record" in making its best-interest determination. *In re Trejo*, 462 Mich at 354-355. In deciding whether termination is in the child's best interests, the court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. The trial court may also consider a parent's history of domestic violence, compliance with his or her case service plan, the parent's visitation history, the child's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App at 714.

There were some best-interest factors that weighed in favor of respondent. There was evidence of a strong bond between respondent and the children. They enjoyed his visits and, after he moved to Florida, they looked forward to having the video chats with him after school and at bedtime. The children were always happy to see him. It was reported that respondent parented appropriately. He had clearly provided a home and paid for food and other needs for the children. When asked to leave the family home, he gave the mother both his bank card, so that she had access to his monthly SSI payments, and his food stamps. His financial support and caring parenting provided stability and permanency for the children. Before this domestic violence incident, there had been no known previous domestic violence incidents. There were certainly positive findings that weighed in respondent's favor with respect to the best-interest analysis.

Nevertheless, respondent's criminal history and actions were sufficient to support the trial court's finding. Respondent had a very long criminal history, which began in 1986 and continued through 2018, which included serious felonies. His prior termination for sexual abuse included forcing the victim to suck his penis and view pornographic photos and videos, attempts to put his penis in her anus, and threats to hit her if she told her mother. He refused to accept any responsibility for his actions in both the prior termination—where he alleged that the victim and her mother lied—and the recent domestic violence, which required the mother to receive hospital care, and which happened while their six-month-old child was in the mother's arms. Respondent simply claimed it was an accident. Respondent had also told lies and was very evasive to the police, the CPS workers, and while under oath in court. Respondent's continued denial of the sexual abuse demonstrated his failure to rectify the conditions that led to his prior termination and placed his young daughter, PFB, at serious risk of harm and sexual abuse, as she continued to mature. His domestic violence also put all the children at risk of harm. All these factors preponderated toward the trial court's conclusion that termination of respondent's parental rights to the children would be in their best interests. Accordingly, the trial court did not clearly err by finding that the preponderance of the evidence showed that termination of respondent's parental rights was in the children's best interests.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra
/s/ Michael J. Riordan